Filed 2/8/24  P. v. Leyva CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADOLFO LEYVA,<br><br>    Defendant and Appellant. | F084997<br><br>(Stanislaus Super. Ct. No. 1230193)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez, and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant and appellant Adolfo Leyva appeals following the denial of his petition for resentencing under Penal Code section 1172.6[1]. Appellant contends the evidence submitted in this case cannot support the trial court's finding after an evidentiary hearing that appellant is ineligible for relief and that the trial court relied on improperly admitted facts in its decision. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, appellant was charged in a criminal complaint with four criminal counts. The first count alleged that on or about May 1, 2007, appellant murdered Erik Preciado in violation of section 187, subdivision (a), with the special circumstance that the murder was "committed, aided and abetted" while appellant was engaged it the commission of a carjacking and with the alleged enhancement that appellant was armed with a firearm (§ 12022, subd. (a)(1)(2)). The second count alleged appellant committed a carjacking in violation of sections 664 and 215, again with the alleged enhancement that appellant was armed with a firearm (§ 12022, subd. (a)(1)(2)). The third count alleged appellant attempted to murder a different victim on the same day (§§ 664, 187, subd. (a)), again with the alleged enhancement that appellant was armed with a firearm (§ 12022, subd. (a)(1)(2)). The fourth count alleged appellant assaulted that second victim with a firearm (§ 245, subd. (a)(2)).

Appellant eventually waived his preliminary hearing, and, in 2012, an information alleging the same four counts was filed against appellant. In 2017, appellant agreed to plead guilty to a lesser included offense to the murder charge, voluntary manslaughter. Appellant waived all presentence credits and agreed to an 11-year term of imprisonment. In exchange, all other charges were dismissed.

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise noted. Appellant's initial petition was filed under section 1170.95. Section 1170.95 was subsequently replaced by section 1172.6.

In the course of that plea agreement, appellant, through counsel, affirmed the following factual basis applied to his plea:

"On May 1st of 2007, Mr. Leyva entered into an agreement with several other defendants to commit a carjacking. As part of that carjacking, Mr. Leyva agreed to drive the suspects in a vehicle. Mr. Leyva did, in fact, drive those suspects in that vehicle to a location here in Stanislaus County.

"At that time he knew several people in the vehicle were armed with firearms. He was not personally armed with a firearm. When they got to the area where they located the victim, Mr. Leyva drove the vehicle back and forth, doing reconnaissance of the victim, who was sitting in the vehicle that they were going to carjack. Mr. Leyva then stopped the vehicle and allowing suspects to get out and approach the victim to complete the carjacking.

"During that contact the suspects had with the victim, Erik Preciado, one of the suspects, Gary Spray, fired his weapon and killed the victim of the vehicle. Mr. Leyva and the other suspects then fled the area."

In addition, appellant, again through counsel, agreed the following facts, related to a coparticipant, Andrew Briseno, who was pleading guilty at the same hearing, would be presented in his case if it went forward:

"[T]he victim was armed at the time and did fire his gun .… [¶] … [¶]

"… Mr. Briseno was one of the occupants of the suspect vehicle, who went over to the area where the victim was in his car in Stanislaus County to commit the carjacking.

"At the time Mr. Briseno was personally armed with a firearm when he went over to complete the carjacking with the other suspects.

"Again, at that time, another suspect got out of the vehicle and shot the victim, Erik Preciado. As they left, there was another bystander next to Erik Preciado, and Mr. Briseno did actions and used force in a way that force was likely to … [¶] … [¶] cause great bodily injury or death.

"At the time he was – Mr. Briseno was armed with a firearm during this incident. He had previously been convicted of a felony here in the State of California and was prohibited from possessing a firearm."

In January 2022, appellant filed a petition for resentencing. The trial court appointed counsel and ordered briefing. The People conceded appellant had presented a prima facie case for relief and was entitled to an evidentiary hearing, but argued appellant was both a direct aider and abettor to the murder and was a major participant who acted with reckless indifference to human life and was therefore ineligible for relief. In response, the court issued an order to show cause and held the required evidentiary hearing.

At the evidentiary hearing, the People presented no further evidence and relied on the factual basis contained in the prior sentencing transcript to support their claim appellant was an aider and abettor to the murder or, in the alternative, that he was a major participant in the underlying felony who acted with reckless disregard for human life. Appellant argued that the People's theories relied on factual claims that were simply unsupported by the limited factual basis recited in the record and that the actual facts showed only that appellant agreed to and participated in a carjacking; a fact insufficient to preclude resentencing.

The trial court provided some impressions on the case before taking the matter under submission and eventually providing a written order denying the petition. In that written order, the court detailed the factual history of the case before writing: "Based on the limited evidence available to this court, the petition for resentencing is again denied. The court finds that Mr. Leyva was a direct aider and abettor to the murder. Mr. Leyva agreed with his [codefendants] to commit a carjacking, he drove them to where the victim and his car were located, drove the vehicle with the codefendants to surveil the victim as the victim was sitting in his vehicle. Then, he stopped the vehicle in a location where [codefendant] Gary Spray could get out and fire his weapon killing the victim. Mr. Leyva allowed the [codefendants] to get back into the car and he drove them away from

4.

the crime scene. Additionally, the court finds that Mr. Leyva was a major participant in the inherently dangerous crime, and he acted with reckless indifference to life. Leyva knew that firearms were present and intended to be used, he did nothing to prevent the crime, he assisted by driving the vehicle past the victim several times, he stopped the vehicle for his [codefendant] to get out and shoot the victim and he drove all of his [coparticipants] away from the scene."

This appeal timely followed.

## DISCUSSION

Appellant challenges the trial court's determination that he was ineligible for relief and further alleges that improper evidence was admitted and relied upon in his case. Appellant challenges both the determination that he directly aided and abetted a murder and the determination he was a major participant in the underlying felony who acted with reckless disregard for human life. In addition, appellant contends that inadmissible hearsay was considered in his case and that this evidence resulted in a due process violation. For the reasons set forth below, we conclude substantial evidence supports the trial court's determination appellant was a major participant acting with reckless disregard for human life. We then conclude that there was no impermissible hearsay admitted and no showing of prejudicial error even if such evidence was considered.

### *Standard of Review and Applicable Law*

As noted, appellant's case arises out of a request for resentencing. The statute governing this process is section 1172.6 (formerly § 1170.95). Under this statutory scheme, a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime … may file a petition with the court that sentenced the petitioner to have the petitioner's … conviction vacated and to be resentenced … when all of the following conditions apply:

5.

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime ….

"(2) The petitioner … accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder .…

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

If the petitioner makes a prima facie showing of eligibility, as occurred here, the trial court is required to issue an order to show cause and to hold a hearing to determine whether to vacate the conviction and resentence the petitioner. (§ 1172.6, subds. (c), (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id*., subd. (d)(3).)

Upon an appeal following an evidentiary hearing denying relief, "[w]e review the trial judge's fact finding for substantial evidence. [Citation.] We " 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence – that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "The

6.

conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

"Murder is the unlawful killing of a human being … with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(2).) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id*., subd. (a)(3).)

"All murder … committed in the perpetration of … carjacking … is murder of the first degree." (§ 189, subd. (a).) A participant in a carjacking "in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (*Id*., subd. (e).)

### Substantial Evidence Supports the Trial Court's Order

We begin with the trial court's determination that appellant was ineligible for relief because he was a major participant in the underlying felony who acted with reckless disregard for human life. Although the analysis overlaps, we first consider whether substantial evidence supports the conclusion appellant was a major participant in the carjacking before considering whether substantial evidence supports the conclusion appellant acted with reckless disregard for human life. We conclude such evidence exists.[2]

---

[2] We therefore do not reach the People's contention that appellant could be convicted under an implied malice murder theory. However, we note that the People's argument turns on a claim that implied malice murder does not require an intent to kill.

7.

**Major Participant Finding**

As noted above, under the current statutory scheme, "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of … [s]ection 190.2' – that is, the statute defining the felony-murder special circumstance." (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

To be a major participant in the underlying felony, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*People v. Banks* (2015) 61 Cal.4th 788, 802 (*Banks*).) "The ultimate question pertaining to being a major participant is 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major" [citations].' ' " (*People v. Clark* (2016) 63 Cal.4th 522, 611.) The following factors may be relevant to a determination of whether a defendant was a major participant in a felony murder: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted; accord, *Clark*, at p. 611.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks*, at p. 803.)

---

The People do not, in their argument, explain how appellant could meet the requirements of section 189, subdivision (a)(2), which requires "intent to kill" when one is not the actual killer, and the underlying felony triggers a first degree murder conviction.

Citing primarily to *Banks*, appellant argues the evidence does not support a major participant finding for most of the relevant questions and that his participation fails to exceed those found insufficient to satisfy the major participant test in several other cases. Upon review of the stipulated facts from the guilty plea, we agree the evidence does not bear on several relevant factors but disagree that appellant's conduct is insufficient to meet the overall requirement that he be a major participant in the underlying felony.

In *Banks*, our Supreme Court recognized the evidence in that case supported a conclusion that the defendant was acting as a getaway driver, but expressly noted there was no evidence establishing the defendant's role in planning the underlying robbery, procuring weapons, or several other factors. (*Banks*, *supra*, 61 Cal.4th at p. 805.) In other words, the defendant could be said to be nothing more than a "getaway driver." (*Ibid.*) Such a limited role was insufficient to show the defendant was a major participant in the underlying felony.

Here, however, appellant admitted that he had specifically agreed to commit a carjacking and that his role was to be the driver. Appellant further admitted he knew several of his coconspirators were armed and confirmed his role in planning the overall event by admitting he not only drove for reconnaissance purposes but also "stopped the vehicle" to allow his coconspirators "to get out and approach the victim to complete the carjacking." Finally, even after the shooting, appellant continued in his role by fleeing the area. This additional confirmation of a deep role in the planning of the event and in the knowledge of risks attendant with an armed carjacking is sufficient evidence to support the trial court's conclusion appellant was a major participant in the underlying felony and not just an unknowing getaway driver.

**Reckless Indifference to Human Life Finding**

We next turn to whether appellant acted with a reckless indifference to human life. Our Supreme Court summarized the relevant law as part of *In re Scoggins* (2020) 9 Cal.5th 667. The general analytical framework is well settled, but turns on a "fact-

intensive, individualized inquiry" for the case. (*Id*. at p. 683.) We therefore provide a general review of the analytical framework before considering the facts of this case.

The reckless indifference analysis considers the totality of the circumstances surrounding the crime to determine whether the accused acted in a manner that created a grave risk of death. As explained by our Supreme Court, in general, a reckless indifference to human life "is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' [Citation.] Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.' [Citation.] Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*In re Scoggins*, *supra*, 9 Cal.5th at pp. 676–677.) However, " '[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*Id*. at p. 677.)

The test considers the facts from both objective and subjective perspectives, considering both as relevant elements in the analysis. "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding

10.

person would observe in the actor's situation." ' " (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)

When considering the evidence in its totality, from both objective and subjective perspectives, our Supreme Court has identified several questions that explore relevant factors in the analysis. No one of these questions is dispositive of the issue, nor is any necessarily sufficient to prove a reckless indifference to human life existed. However, given their usefulness, we begin by reviewing them in the context of the evidence of this case.

The questions are: "Did the defendant use or know that a [weapon] would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)[3] We therefore consider the facts of this case in light of these guiding questions to determine whether the evidence supports a conclusion that appellant acted with a reckless indifference to human life.

Concerning weapons and knowledge thereof, the factual basis provided for appellant's plea confirmed that, although unarmed himself, appellant knew several coconspirators were armed. While it is unclear how many weapons were actually used, the factual basis confirms there were at least two other participants in the crime, the shooter and appellant's codefendant at the hearing, and that both were armed. The factual basis also shows that appellant was present at the crime, although his exact

---

[3] An additional potential factor, identified in *In re Moore* (2021) 68 Cal.App.5th 434, 439, is defendant's youth at the time of the offense. Neither side argues this factor is relevant.

location was not disclosed. Further, as the driver and a person who not only agreed to participate in a carjacking with armed confederates but also conducted reconnaissance on how to effectuate the crime, appellant was in a position where he could both restrain the scope of the crime and aid the victim if desired.

When looking at the duration of the interaction between the perpetrators of the felony and the victims and appellant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force, there is little evidence related to these questions in the record. The duration factor only shows that people left appellant's car, approached the victim, and shot the victim, that the victim fired a gun in his possession, that there was an interaction with a second victim, and then that the assailants fled. The specific amount of time in which these acts occurred is not clear. Similarly, although appellant knew the two identified confederates were armed, and that both took some violent action in the event, the record does not show what level of knowledge appellant would have had regarding their propensity for violence or the specific likelihood they would use lethal force.

On the efforts to minimize the risks of violence, there is no specific indication appellant sought to minimize risk. Rather, the record shows appellant agreed to an armed carjacking and assisted with both reconnaissance and with executing and fleeing from the event.

Appellant argues these facts closely parallel the facts of *In re Bennett* (2018) 26 Cal.App.5th 1002, a case where the court found the defendant was not a major participant who acted with reckless indifference to human life in a robbery resulting in a murder. In that case, the defendant knew and called a known drug dealer for the purpose of having his coparticipants steal drugs from the dealer. The defendant then drove his coparticipants to a location near the drug dealer's apartment, knowing his coparticipants were armed. The defendant remained in the car while his two coparticipants went into the apartment complex where they chased down, shot, and killed the drug dealer. The

defendant was not aware that the shooting happened and drove his coparticipants away from the scene. (*Id*. at pp. 1019–1023.) The Court of Appeal found the defendant's role was limited to planning a pure robbery, focusing heavily on his distance from the event and the way unexpected conduct by the drug dealer led to the chase and shooting. (*Ibid.*)

While there are some parallel facts, we find *Bennett* distinguishable. While the facts presented in this case are not as extensive as those in *Bennett*, they are more specific on certain key issues. These include the fact that, unlike the defendant in *Bennett* who merely planned a robbery then sat across the street, appellant engaged in specific reconnaissance related to executing the planned armed carjacking and assisted in determining a location to drop off the participants to effectuate the plan effectively. Further, unlike *Bennett* where the facts specifically showed the defendant did not know about the shooting, the facts in this case allow a reasonable inference that appellant did witness the carjacking and shooting given his reconnaissance role and his assistance in dropping off and fleeing with his cohorts. At a minimum, the facts do not support the same inference relied on in *Bennett* that the defendant was unaware of the shooting at the time.

Reviewing the facts presented, this court finds substantial evidence in support of the trial court's ruling. While there are not an overwhelming quantity of facts to consider, the specific facts provided are of sufficient quality to support the trial court's finding. Appellant's role in the carjacking, his knowledge that guns were present, his specific reconnaissance with his coparticipants, and his conduct in assisting with the plan even after the shooting occurred and a second victim was attacked, all support the conclusion appellant acted with reckless indifference to human life.

### *Appellant's Due Process and Hearsay Arguments*

Appellant also raises claims that improper hearsay evidence was admitted and relied upon by the trial court in a manner that violated appellant's due process rights. Appellant's argument arises because the prosecutor made several statements in arguing

13.

against resentencing that introduced or referred to facts not contained within the admitted record. Some examples of these statements include facts such as the make of the victim's car, the time of the carjacking being at night, a claim the victim was shot in the head, an assertion that the violent action taken against the second victim was another shooting, and a claim appellant knew his cohorts were going to use deadly force.

Appellant objected to these arguments as relying on facts not in the evidence. The court responded by stating it considered the statements to be argument and that it would allow both sides to make arguments based on their interpretation of the factual basis. Later, the trial court made statements that incorporated these allegedly extra factual arguments as it worked through its positioning in the case, while stating it would provide a written order. As shown above, however, the written order contained only the specific factual basis contained in the record and the trial court's analysis made no reference to unsupported facts.

It is well settled in the law that improper introduction of facts by the prosecution can constitute misconduct, but that such statements must fundamentally infect the proceedings. (See *People v. Hill* (1998) 17 Cal.4th 800, 820, 827–828.) Similarly, statements by attorneys are not evidence. (See CALCRIM No. 222 ["Nothing that the attorneys say is evidence"].) It is equally well recognized that the trial court knows and applies the correct law. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.)

This is not a case, then, where improper hearsay was admitted. Nor is there any indication that the People's arguments infected the proceedings. Rather, the trial court heard the argument and discussed the case with counsel based on the arguments presented. The court then took the matter under submission and issued a written order correctly identifying the admissible facts and analyzing the case under only those facts. There is no indication that the People's arguments prejudiced the trial court or caused any prejudicial error in the proceedings, even if they are assumed improper.

Further, to the extent appellant contends his due process rights were violated under *Apprendi v. New Jersey* (2000) 530 U.S. 466 and related cases because the trial court – and not a jury – made factual determinations related to his underlying conduct, we disagree. Courts have uniformly concluded that the resentencing statutes do not trigger such protections because they are ameliorative sentencing statutes that do not arise until after a final conviction. (*People v. Silva* (2021) 72 Cal.App.5th 505, 520–522.) The trial court's fact finding in the context of determining eligibility is statutorily restricted to defined evidence considered at a dedicated hearing, demonstrating notice and an opportunity to be heard. (See § 1172.6, subd. (d)(3).) Our review shows the trial court properly followed those requirements and therefore find no basis to conclude that appellant's due process rights were violated by the trial court's factual determination that appellant was ineligible for relief.

## DISPOSITION

The order denying appellant's petition to vacate his conviction and for resentencing is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

15.